

FILED BY _____ D.C.

DEC 19 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. <u>19-20178-CR-CMA(s)</u>
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1341
18 U.S.C. § 2
18 U.S.C. § 981(a)(1)(C)

**UNITED STATES OF AMERICA**

**vs.**

**DANE ROSEMAN,**
   **a/k/a "Dayne Roseman," and**
**IVAN ACEVEDO,**

   **Defendants.**
_____/

### SUPERSEDING INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Superseding Indictment:

### The Corporations

1.     Woodbridge   Group   of   Companies,   LLC   (d/b/a   Woodbridge   Wealth) ("Woodbridge") was a Sherman Oaks, California-based financial services company formed in or around 2014.

2.     Woodbridge   Mortgage   Investment   Fund   1,   LLC,   Woodbridge   Mortgage Investment Fund 2, LLC, Woodbridge Mortgage Investment Fund 3, LLC, Woodbridge Mortgage Investment Fund 3A, LLC, Woodbridge Mortgage Investment Fund 4, LLC, Woodbridge Commercial Bridge Loan Fund 1, LLC, and Woodbridge Commercial Bridge Loan Fund 2, LLC

(collectively, "Woodbridge Fund Companies") were Delaware companies formed between in or around 2010 and in or around 2015, all of which were created to act on behalf of Woodbridge.

3.       WMF Management, LLC ("WMF") was a California company formed in or around 2012 and created to act on behalf of Woodbridge.

4.       Woodbridge Structured Funding, LLC, a/k/a Woodbridge Structured Funding of Florida, LLC, ("WSF") was a Delaware company formed in or around 2009 and created to act on behalf of Woodbridge.

5.       Woodbridge Realty of Colorado ("Woodbridge Realty") was a Colorado company formed in or around 2014 and created to act on behalf of Woodbridge.

6.       Mercer Vine, Inc. ("Mercer Vine") was a California corporation formed in or around 2014 and created to act on behalf of Woodbridge.

7.       Riverdale Funding, LLC ("Riverdale") was a Delaware corporation formed in or around 2012 and created to act on behalf of Woodbridge.

8.       RS Protection Trust ("RS Trust") was created under Nevada law in or around 2013 and served as a holding trust for the assets of Woodbridge, WMF, WSF, and approximately two-hundred and seventy-two (272) other Woodbridge associated Delaware and Colorado companies.

9.       Devon Mason, Inc. ("Devon Mason") was a California company formed in or around 2013.

10.      Precise Investment Group, LLC ("Precise Investment") was a California company formed in or around 2014.

11.      iAlt Portfolio Management, LLC and iAlt Enhanced Income Portfolio I, LLC (d/b/a iAlternatives) (collectively, "iAlternatives") was a California company formed in or around 2015.

12.     Talon Opportunities, Inc. ("Talon") was a California-based company formed in or around 2016.

13.     Lionshare Lending, LLC ("Lionshare") was a private equity, money lending venture located in Sherman Oaks, California, established by Robert Shapiro sometime in or around 2017 or 2018.

### The Defendants and Other Individuals

14.     Robert Shapiro was the owner, president, and chief executive officer of Woodbridge.   Shapiro additionally operated, directed and controlled the Woodbridge Fund Companies, WMF, WSF, Woodbridge Realty, Mercer Vine, Riverdale, RS Trust, and Lionshare.

15.     Defendant **DANE ROSEMAN, a/k/a "Dayne Roseman,"** served as the managing director of Woodbridge between in or around January 2015 and in or around December 2017. **ROSEMAN**, among other things, sold Woodbridge securities, created Woodbridge marketing materials and sales scripts, and trained and supervised Woodbridge internal sales agents who sold Woodbridge securities. **ROSEMAN** acted as a corporate officer for Precise Investment and Talon. ROSEMAN was employed at Lionshare from sometime in or around to 2017 to sometime in or around 2018.

16.     Defendant **IVAN ACEVEDO** started working for Woodbridge as a sales agent in or around 2009. Between in or around 2013 and in or around December 2014, **ACEVEDO** served as the managing director of Woodbridge, and, among other things, sold Woodbridge securities, created Woodbridge marketing materials and sales scripts, and trained and supervised Woodbridge internal sales agents who sold Woodbridge securities. Between in or around January 2015 and in or around December 2017, **ACEVEDO** acted as an outside sales agent and the owner and operator of Devon Mason and iAlternatives, during which time he sold Woodbridge securities.

### Definitions

17.     A "security" is a financial instrument that holds some type of monetary value.  It represents an ownership position in a corporation via stock, bond, promissory note, or right to ownership as represented by a share, option, or unit.

18.     A "promissory note" is a financial instrument that contains a written promise by one party to pay another party a definite sum of money, either on demand or at a specified future date.  A promissory note contains key terms pertaining to the debt and obligation, such as the principal amount, interest rate, maturity date, place of issuance, and issuer's signature.

19.     A "unit" is a type of security that represents an ownership interest in a company.

20.     A *"Ponzi"* or *"Ponzi* scheme" is an investment fraud scheme that involves the payment of claimed returns to existing investors from funds contributed by new investors.  *Ponzi* scheme organizers often solicit new investors by promising to invest funds in opportunities claimed to generate high returns with little or no risk.  In many *Ponzi* schemes, the participants focus on attracting new money to make promised payments to earlier-stage investors to create the false appearance that investors are profiting from a legitimate business.  *Ponzi* schemes require a consistent flow of money from new investors to continue and tend to collapse when it becomes difficult to recruit new investors or when a large number of investors ask for their money back.

21.     A "phone room" or "boiler room" is a place or operation where salespeople use telephones, emails, and other means to contact potential investors in order to sell speculative and fraudulent securities through high-pressure sales tactics.

### COUNT 1
### Conspiracy to Commit Mail Fraud and Wire Fraud
### (18 U.S.C. § 1349)

1.     The General Allegations section of this Superseding Indictment is realleged and

fully incorporated herein by reference.

2.      From in or around July 2012, through in or around December 2017, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**DANE ROSEMAN,**
**a/k/a "Dayne Roseman," and**
**IVAN ACEVEDO,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate, and agree with each other, Robert Shapiro, and others known and unknown to the Grand Jury, to commit certain offenses against the United States, namely:

(a)      to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, for the purpose of executing the scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1341; and

(b)      to knowingly and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate and foreign

commerce, by means of wire communication, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

## PURPOSE OF THE CONSPIRACY

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by: (a) making and causing others to make false and fraudulent representations and promises to investors, so that investors would provide funds to Woodbridge, invest additional funds in Woodbridge, and not seek to withdraw funds from Woodbridge; (b) failing to utilize investor funds and assets in the manner that the defendants, their co-conspirators and others had advertised and promised; and (c) concealing the commission of the offense.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among others, the following:

4.      Beginning in or around July 2012 and continuing through at least in or around December 2017, **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators primarily sold investors:  (a) short-term promissory notes that purportedly paid investors monthly interest, which Woodbridge described as a First Position Commercial Mortgage ("FPCM"); and (b) fund offerings with five-year terms ("Fund Offerings") that also claimed to pay investors interest payments, which were sold to investors as equity "units."  The defendants and their co-conspirators claimed that both the notes and the units were "protected" by real property owned by third-party borrowers.

5.      Through telephone and in-person conversations, as well as the dissemination of sales material through mailings, wire communications such as emails and website displays, and other means, **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-

conspirators promoted notes and units to investors and external sales agents. **ROSEMAN**, **ACEVEDO**, and their co-conspirators targeted elderly investors who had Individual Retirement Accounts, and attracted them by, among other means, pitching the investment as safe and secure.

6. **DANE ROSEMAN, a/k/a "Dayne Roseman,"** and **IVAN ACEVEDO** managed and hired a team of sales agents to solicit potential investors from the Woodbridge "phone room." The phone room functioned as a "boiler room," and featured high-pressure sales tactics, deception, and investor manipulation. Through telemarketing, sales agents contacted potential investors located throughout the United States, and offered and sold Woodbridge investments to them.

7. **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators also used a network of hundreds of external sales agents, called "financial planners," to solicit investments from the general public via television, radio, and newspaper advertisements, telemarketing campaigns, social media, websites, seminars, and in-person presentations. At one point, the Woodbridge network of external salespeople included over 600 people.

8. After **IVAN ACEVEDO** stopped working at Woodbridge in or around December 2014, **ACEVEDO** continued to receive severance payments from Woodbridge, totaling approximately $124,496. Starting in or around 2015, **ACEVEDO** served as an external sales agent and financial planner for Woodbridge and recruited additional Woodbridge investors through his company, iAlternatives. As late as November 2017, **ACEVEDO** continued to receive payments from Woodbridge relating to the Woodbridge investment products he sold to his investors.

9. From in or around 2012 to in or around December 2017, Woodbridge paid more than $80 million in commissions to sales agents selling investments in Woodbridge securities.

10. **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators directed investors to make payments for the Woodbridge investments by: (a)

transferring funds electronically via interstate wires to Woodbridge's bank accounts; and (b) mailing checks to Woodbridge's corporate office in California.

### First Position Commercial Mortgage ("FPCM")

11.     **DANE ROSEMAN**, a/k/a **"Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators' FPCM business model was to solicit money from investors and, in exchange, issue investors promissory notes reflecting purported loans to Woodbridge that paid monthly interest and matured in twelve to eighteen months.  The FPCM was issued by one of the Woodbridge Fund Companies.

12.     **DANE ROSEMAN**, a/k/a **"Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently represented that the FPCM was a "simple, safer and more secured opportunity for individuals to achieve their financial objectives."  They told investors that Woodbridge was making short-term, high-interest-rate loans to third-party commercial property owners that would be secured by real estate.  The defendants falsely and fraudulently claimed that Woodbridge's profits would be generated by the difference between the interest rate Woodbridge charged borrowers and the interest rate it paid investors.

13.     **DANE ROSEMAN**, a/k/a **"Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently represented to investors that they would have a "first-position" on the real property serving as collateral on the loan, which meant "you have priority over any other liens or claims on a property if the owner [borrower] defaults."

14.     **DANE ROSEMAN**, a/k/a **"Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently told investors that the third-party borrowers were bona-fide commercial property owners who could not obtain traditional loans and were willing to pay Woodbridge higher interest rates for short-term financing.  They falsely and fraudulently claimed

8

that (a) the third-party borrowers' real property was the collateral that formed the claimed "safety" and "security" in the Woodbridge FPCM, and (b) that investors' returns were generated by the third-party borrowers' interest and principal payments.

15.     Contrary to the representations of **DANE ROSEMAN, a/k/a "Dayne Roseman,"** **IVAN ACEVEDO**, and their co-conspirators, Woodbridge made almost no loans to third-party borrowers, and there were almost no real properties belonging to third-party borrowers that were used as collateral.  Robert Shapiro actually used nearly all of the money received from FPCM investors to purchase real properties that he and his co-conspirators controlled, a material fact that Shapiro, **ROSEMAN, ACEVEDO**, and their co-conspirators failed to disclose to investors.

16.     For the Robert Shapiro-owned properties, there were no loan payments and no interest payments to Woodbridge.  Instead, Shapiro and his co-conspirators operated a *Ponzi* scheme, generating income primarily through new investor money and using the newly raised money to make scheduled payments to previous investors.

17.     **DANE ROSEMAN, a/k/a "Dayne Roseman,"** and **IVAN ACEVEDO** instructed internal sales agents to conceal the fact that Shapiro, through his many shell companies, actually owned the real properties.  **ROSEMAN, ACEVEDO**, and their co-conspirators directed sales agents that if investors asked about the ownership of the properties, to falsely and fraudulently represent that the third-party borrowers were "affiliates" of Woodbridge.  If investors asked about the identity of the "affiliates," the defendants and their co-conspirators directed sales agents to falsely and fraudulently explain that the  "affiliates" were people that "had done business" with Woodbridge or Shapiro.  Towards the end of the conspiracy, the defendants and their co-conspirators allowed sales agents to disclose that "some" of the properties were owned by

Woodbridge, still concealing the material fact that the majority of the properties were owned by Shapiro, and that the investment was thus not as "diversified" or secure as advertised.

### Fund Offerings

18.     When FPCM promissory notes became due after their twelve to eighteen month terms, **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators sought extensions and re-enrollment of FPCM investors, and frequently convinced FPCM investors to move their money into the longer-term five-year Fund Offerings.

19.     The Fund Offerings consisted of private placement investments with five-year terms. **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators claimed that the units for the Fund Offerings had a greater rate of return than the FPCM notes.  For the Fund Offerings, the defendants and their co-conspirators falsely and fraudulently represented that the Woodbridge Fund Companies would pool money received from FPCM investors and, among other things, lend those funds to third-party borrowers for one to two years.  The defendants and their co-conspirators falsely and fraudulently told investors that the value in these units was based on the performance of Woodbridge's assets, including its ownership of FPCMs.

20.     In the offering memoranda for the Fund Offerings, Robert Shapiro, **DANE ROSEMAN, a/k/a "Dayne Roseman," IVAN ACEVEDO**, and their co-conspirators falsely and fraudulently represented that investors' money would be used for mezzanine loans, construction loans, real estate acquisitions, and other real estate investments, notably, Woodbridge's FPCMs. In describing the Fund Offerings to investors, the defendants and their co-conspirators made some of the same false and fraudulent misrepresentations as those made to the FPCM investors discussed above.

21.     Because the Woodbridge Fund Companies were not receiving any interest payments and principal repayments on the Robert Shapiro-owned real property transactions, Shapiro used new investor funds to pay the interest and dividends owed to previous Fund Investors. Through these payments, the defendants and their co-conspirators made it appear as if Woodbridge was loaning investor funds to actual third-party borrowers and creating FPCMs, when there were no third-party borrowers making any principal and interest payments to Woodbridge or the Fund Offerings.

22.     In or around 2017, Robert Shapiro, **DANE ROSEMAN**, **a/k/a "Dayne Roseman,"** **IVAN ACEVEDO**, and their co-conspirators continued selling false and fraudulent investments in FPCM and Fund Offerings without disclosing to investors that Woodbridge was insolvent and unable to meet its obligations to pay the interest or promised returns on investment. Shapiro, **ROSEMAN**, **ACEVEDO**, and their co-conspirators received more than $52 million of investor money from October 2017 through the filing of Woodbridge's bankruptcy in December 2017.

23.     To induce investors to provide money to the defendants and their co-conspirators, **DANE ROSEMAN**, **a/k/a "Dayne Roseman," IVAN ACEVEDO**, Robert Shapiro, and their co-conspirators made and caused others to make materially false and fraudulent statements to investors, and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among other things, the following:

**Materially False Statements**

(a)     that FPCM investors had first position and priority over any other liens or claims on a property if the property owner defaulted;

(b)     that third-party borrowers paid interest on Woodbridge loans;

(c)     that Woodbridge revenue was generated by third-party borrowers paying interest on Woodbridge loans;

(d)     that Woodbridge "affiliates" were third-party borrowers and commercial real property owners;

(e)     that Woodbridge secured investor money with real property;

(f)     that Woodbridge would use investor money to originate loans to third-party borrowers;

(g)     that Woodbridge investments were "low risk," "simpler," "safe" and "conservative;" and

(h)     that Woodbridge and the Woodbridge Fund Companies were profitable.

<u>**Concealment and Omission of Material Facts**</u>

(i)     that new Woodbridge investor money was used to pay prior Woodbridge investors;

(j)     that Robert Shapiro used FPCM investor money to buy real property;

(k)     that Robert Shapiro owned nearly all of the real property at the center of every investment product offered by Woodbridge;

(l)     that investments in Woodbridge were not diversified;

(m)     that several states issued cease-and-desist orders against Woodbridge and sales agents that sold Woodbridge securities, barring sales of Woodbridge securities; and

(n)      that Woodbridge was insolvent and/or on the verge of bankruptcy.

24.     Approximately $2.5 million, traceable to money raised from Woodbridge investors, was paid to **DANE ROSEMAN, a/k/a "Dayne Roseman,"** and approximately $1.1 million, traceable to money raised from Woodbridge investors, was paid to **IVAN ACEVEDO**.  Because of the large commission payments and diversion of investor funds to **ROSEMAN, ACEVEDO,**

and Robert Shapiro, Woodbridge was not as safe of an investment – or as profitable – as was advertised to investors.

25.     On or about December 4, 2017, most of the Woodbridge companies filed Chapter 11 bankruptcy, which caused over 8,000 investors to suffer substantial losses, as they were owed at least $961 million in principal.  At least 2,600 of these investor victims invested their retirement savings, totaling approximately $400 million.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-9
### Mail Fraud
### (18 U.S.C. § 1341)

1.     The General Allegations section of this Superseding Indictment is realleged and fully incorporated herein by reference.

2.     From in or around July 2012, through in or around December 2017, in Miami-Dade, Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendants,

**DANE ROSEMAN,**
**a/k/a "Dayne Roseman," and**
**IVAN ACEVEDO,**

did knowingly, and with the intent to defraud, devise, and intend to devise a scheme and artifice to defraud, and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon, in violation of Title 18, United States Code, Section 1341.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendants and their accomplices to unlawfully enrich themselves by: (a) making and causing others to make false and fraudulent representations and promises to investors, so that investors would provide funds to Woodbridge, invest additional funds in Woodbridge, and not seek to withdraw funds from Woodbridge; (b) failing to utilize investor funds and assets in the manner that the defendants, their accomplices and others had advertised and promised; and (c) concealing the commission of the offense.

### MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 25 of the Manner and Means Section of Count 1 are realleged and fully incorporated herein as a description of the manner and means of the scheme and artifice.

### USE OF THE MAILS

5.      On or about the dates specified as to each count below, the defendants specified below, for the purpose of executing and in furtherance of the scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, did knowingly cause to be delivered certain mail matter by the United States Postal Service and by private and commercial interstate carrier, according to the directions thereon:

| COUNT | DEFENDANT | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|-------|-----------|------------------|------------------------|
| 2 | **IVAN ACEVEDO** | September 22, 2014 | Investors C.Z. and J.Z's agent mailed check #273269 drawn from investor C.Z. and J.Z.'s TD Bank account in Fort Pierce, Florida, to Woodbridge in Sherman Oaks, California |

| COUNT | DEFENDANT | APPROXIMATE DATE | DESCRIPTION OF MAILING |
|---|---|---|---|
| 3 | **IVAN ACEVEDO** | December 20, 2014 | Investor I.I. mailed check #101 drawn from investor I.I.'s SunTrust Bank account in Boca Raton, Florida, to Woodbridge Mortgage Investment Fund 3, LLC in Sherman Oaks, California |
| 4 | **IVAN ACEVEDO** | December 20, 2014 | Investor L.C. mailed check #264 drawn from investor L.C.'s Chase Bank account in Vero Beach, Florida, to Woodbridge Mortgage Investment Fund 3, LLC in Sherman Oaks, California |
| 5 | **IVAN ACEVEDO** | December 20, 2014 | Investors A.W. and N.W. mailed check #193 drawn from investors A.W. and N.W.'s AmTrust Bank account in Coral Springs, Florida, to Woodbridge Mortgage Investment Fund 3, LLC in Sherman Oaks, California |
| 6 | **DANE ROSEMAN, a/k/a "Dayne Roseman"** | March 19, 2015 | Investor M.W. mailed check #1341 drawn from investor M.W.'s Regions Bank account in Boca Raton, Florida, to Woodbridge in Sherman Oaks, California |
| 7 | **DANE ROSEMAN, a/k/a "Dayne Roseman"** | April 15, 2015 | Investor L.S.'s agent mailed check #108 drawn from investor L.S.'s Merrill Lynch account in Wellington, Florida, to Woodbridge in Sherman Oaks, California |
| 8 | **DANE ROSEMAN, a/k/a "Dayne Roseman"** | March 13, 2017 | Investor D.J. mailed check #201 drawn from investor D.J.'s Wells Fargo account in Jensen Beach, Florida, to Woodbridge in Sherman Oaks, California |
| 9 | **DANE ROSEMAN, a/k/a "Dayne Roseman"** | August 25, 2017 | Investor H.B. mailed check #1003 drawn from investor D.J.'s Fidelity account in Delray Beach, Florida, to Woodbridge in Sherman Oaks, California |

In violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS 10-11
### Wire Fraud
### (18 U.S.C. § 1343)

1.      Paragraphs 1 through 8, 10, 12 through 15, and 17 through 21 of the General Allegations section of this Superseding Indictment are realleged and fully incorporated herein by reference.

2.      From in or around July 2012, through in or around December 2017, in Miami-Dade Broward, and Palm Beach Counties, in the Southern District of Florida, and elsewhere, the defendant,

### DANE ROSEMAN,
### a/k/a "Dayne Roseman,"

did knowingly, and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing such scheme and artifice to defraud, did knowingly transmit and cause to be transmitted in interstate and foreign commerce, by means of wire communication, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343.

### PURPOSE OF THE SCHEME AND ARTIFICE

3.      It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by: (a) making and causing others to make false and fraudulent representations and promises to investors, so that investors would provide funds to Woodbridge, invest additional funds in Woodbridge, and not seek to withdraw funds from Woodbridge; (b) failing to utilize investor funds and assets in the manner that the defendant, his accomplices and others had advertised and promised; and (c) concealing the commission of the offense.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

4.      Paragraphs 4 through 25 of the Manner and Means Section of Count 1 are realleged and fully incorporated herein as a description of the manner and means of the scheme and artifice.

## USE OF THE WIRES

5.      On or about the dates specified as to each count below, for the purpose of executing and in furtherance of the scheme and artifice to defraud and to obtain money and property by means of materially and false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, the defendant, **DANE ROSEMAN, a/k/a "Dayne Roseman,"** did transmit and cause to be transmitted by wire some communication in interstate commerce to help carry out the scheme to defraud, according to the directions thereon:

| COUNT | APPROXIMATE DATE | DESCRIPTION OF WIRE COMMUNICATION |
|-------|------------------|----------------------------------|
| 10 | December 22, 2016 | Investor M.W., located in Boca Raton, Florida, wired $250,000 from his Regions Bank account in Florida to a Woodbridge Mortgage Investment Fund 3A, LLC Comerica Bank account in Sherman Oaks, California |
| 11 | July 5, 2017 | Investor D.D., located in Fort Pierce, Florida, wired $50,000 from a Provident Trust Group LLC account in Nevada to Woodbridge Mortgage Investment Fund 4, LLC Comerica Bank account in Sherman Oaks, California |

In violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE
### (18 U.S.C. § 981(a)(1)(C))

1.      The allegations of this Superseding Indictment are realleged, and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain

property in which the defendants, **DANE ROSEMAN, a/k/a "Dayne Roseman," and IVAN ACEVEDO**, have an interest.

2.      Upon conviction of a violation of Title 18, United States Code, Sections 1341, 1343 and/or 1349, as alleged in this Superseding Indictment, the defendants, **DANE ROSEMAN, a/k/a "Dayne Roseman," and IVAN ACEVEDO**, shall each forfeit to the United States, any property, real or personal, which constitutes or is derived from proceeds traceable to such violations, pursuant to Title 18, United States Code, Section 981(a)(1)(C), which is made applicable by Title 28, United States Code, Section 2461(c).

3.      If any property subject to forfeiture, as a result of any act or omission of a defendant,

    a.   cannot be located upon the exercise of due diligence,

    b.   has been transferred or sold to, or deposited with, a third party,

    c.   has been placed beyond the jurisdiction of the Court,

    d.   has been substantially diminished in value, or

    e.   has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____
FOREPERSON

_____
ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

_____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY

_____
LISA H. MILLER
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

DANE ROSEMAN, a/k/a "Dayne
Roseman," and IVAN ACEVEDO,
_____ /
                          Defendants.

CASE NO. 19-CR-20178-CMA(s)

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New defendant(s)            Yes _____  No ___✓___
Number of new defendants            2
Total number of counts            11

Court Division: (Select One)

| ✓ | Miami | | Key West |
| | FTL | | WPB | | FTP |

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:       (Yes or No)        No
    List language and/or dialect          _____

4.  This case will take __21__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:

    (Check only one)

| I | 0 to 5 days | _____ |
| II | 6 to 10 days | _____ |
| III | 11 to 20 days | _____ |
| IV | 21 to 60 days | ✓ |
| V | 61 days and over | |

    (Check only one)

| Petty | _____ |
| Minor | _____ |
| Misdem. | _____ |
| Felony | ✓ |

6.  Has this case previously been filed in this District Court?        (Yes or No)      Yes
    If yes: Judge Cecilia M. Altonaga       Case No. 19-CR-20178-CMA(s)
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?        (Yes or No)        No
    If yes: Magistrate Case No.            _____
    Related miscellaneous numbers:        _____
    Defendant(s) in federal custody as of _____
    Defendant(s) in state custody as of   _____
    Rule 20 from the District of          _____

    Is this a potential death penalty case? (Yes or No)        No

7.  Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)?       Yes _____  No ✓

8.  Does this case originate from a matter pending in the Northern Region U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?       Yes _____  No ✓

_____
ROGER CRUZ
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No.: 157971

*Penalty Sheet(s) attached

REV 8/13/2018

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name: DANE ROSEMAN, a/k/a "Dayne Roseman"**

**Case No: 19-CR-20178-CMA(s)**

Count # 1:

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\*Max. Penalty:**       Twenty (20) Years' Imprisonment

Counts # 6-9:

Mail Fraud

Title 18, United States Code, Section 1341

**\*Max. Penalty:**       Twenty (20) Years' Imprisonment as to Each Count

Counts # 10-11:

Wire Fraud

Title 18, United States Code, Section 1343

**\*Max. Penalty:**       Twenty (20) Years' Imprisonment as to Each Count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **IVAN ACEVEDO**

**Case No**: **19-20178-CR-CMA(s)**

Count #: 1

Conspiracy to Commit Mail and Wire Fraud

Title 18, United States Code, Section 1349

**\* Max. Penalty**:              Twenty (20) Years' Imprisonment


Counts #: 2-5

Mail Fraud

Title 18, United States Code, Section 1343

**\* Max. Penalty**:              Twenty (20) Years' Imprisonment as to Each Count


**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**